**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

**JEFFREY COLLINS**,

                        Plaintiff,

       - v -                                     Civ. No. 9:10-CV-01527
                                                              (GTS/RFT)

**SERGEANT CARON**, *Upstate Correctional Facility*,
**MARSH**, *Correction Officer, Upstate Correctional Facility,*
**J. GAW**, *Correction Officer, Upstate Correctional Facility,*
**JOHN DOE**, *Correction Officer, Upstate Correctional Facility,*
**R.N. J. STOUT**,

                        Defendants.

**APPEARANCES:**                                **OF COUNSEL:**

**JEFFREY COLLINS**
93-A-4735
Plaintiff, *Pro Se*
Southport Correctional Facility
P.O. Box 2000
Pine City, NY 14871

**HON. ERIC T. SCHNEIDERMAN**         **DOUGLAS J. GOGLIA, ESQ.**
Attorney General of the State of New York     Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

Plaintiff Jeffrey Collins brings this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that Defendants, who were employees at Upstate Correctional Facility ("UCF"), used excessive force and otherwise failed to protect against him in contravention of the Eighth Amendment. Dkt. No. 8, 2nd Am. Compl. Now before this Court is Plaintiff's Motion for Summary Judgment, Dkt.

No. 34, and Defendants' Cross-Motion for Summary Judgment, Dkt. No. 37. Defendants oppose Plaintiff's Motion on the grounds that Plaintiff has not exhausted his administrative remedies as required under the Prison Litigation Reform Act ("PLRA"),[1] his injuries were *de minimus* and therefore insufficient to support an excessive use of force claim, and Plaintiff failed to demonstrate personal involvement on behalf of Defendants Marsh and Stout. *See generally* Dkt. No. 37-1, Defs.' Mem. of Law. Plaintiff opposes Defendants' Cross-Motion because, *inter alia,* Defendants waived the affirmative defense of exhaustion by failing to plead it in their Answer. Dkt. No. 44, Pl.s' Opp'n at p. 8. Defendants Replied to Plaintiff's Opposition. Dkt. No. 45. For the reasons that follow, we recommend that Plaintiff's Motion for Summary Judgment be **DISMISSED**, and we further recommend that Defendants' Cross-Motion for Summary Judgment be **DISMISSED in part and GRANTED in part**.

## II. DISCUSSION

### A. Exhaustion

Both the Second Circuit and the Supreme Court have made clear that failure to exhaust is an affirmative defense. *See Jones v. Bock*, 127 S. Ct. 910, 921 (2007); *Jenkins v. Haubert*, 179 F.3d 19, 28–29 (2d Cir. 1999). Generally, failure to plead an affirmative defense results in its waiver. *See* FED R. CIV. P. 8(c) & 12(b); *Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1580 (2d Cir. 1994). Nonetheless, a "Court has the discretion to treat defendant's motion for summary judgment as a motion to amend his answer to plead the affirmative defense of failure to exhaust." *Bonilla v. Janovick*, 2005 WL 61505 at *2 (E.D.N.Y. Jan. 7, 2005) (citing *Abney v. Cnty. of Nassau*, 237 F. Supp. 2d 278, 280 (E.D.N.Y. 2002); *Boston v. Takos*, 2002 WL 31663510, at *3

---

[1] The PLRA is codified at 42 U.S.C. § 1997e, *et. seq.*

(W.D.N.Y. Oct. 4, 2002). However, notwithstanding Rule 15's requirement that leave to amend be "'freely given,' district courts nonetheless retain the discretion to deny that leave in order to thwart tactics that are dilatory, unfairly prejudicial or otherwise abusive." *Littlejohn v. Artuz*, 271 F.3d 360, 363 (2d Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *cf. Saks v. Franklin Covey Co.*, 316 F.3d 337 (2d Cir. 2003).

In the instant case Plaintiff filed his Second Amended Complaint on April 20, 2011, in which he enumerated in great detail his attempts to exhaust his claims under the prison's Grievance Program. Dkt. No. 8, 2nd Am. Compl. at ¶¶ 51–63. On October 24, 2011, Defendants filed their Answer in which they asserted several affirmative defenses, but did not raise exhaustion. Dkt. No. 16. The period for Discovery closed on August 10, 2012. Dkt. No. 28, Dec. and Order, dated June 12, 2012. On September 28, 2011, a month after the close of discovery, and after Plaintiff had already filed his Motion for Summary Judgment, Defendants filed a Cross-Motion for Summary Judgment asserting for the first time the affirmative defense of failure to exhaust. Dkt. Nos. 34, Pl.'s Mot. Summ. J.; & 37-1, Defs.' Mem. of Law at pp. 9–11.[2] On October 22, 2012, in Reply to Plaintiff's Opposition, Defendants admitted their failure to plead the affirmative defense in their Answer, and requested that the Court treat their Cross-Motion for Summary Judgment as a request for leave to amend their Answer. Dkt. No. 45, Defs.' Reply, at pp. 2–3.

We decline Defendants' invitation. Defendants have provided no excuse for their failure to plead the affirmative defense in their Answer. *See* Dkt. No. 45, Defs.' Reply at pp. 1–3. It is a given that the affirmative defense of exhaustion is elementary in § 1983 litigation. In this case that defense should have been apparent to Defendants from the face of the Second Amended Complaint, and

---

[2] Defendants' Opposition is not properly paginated, therefore, any references thereto are to the page numbers automatically assigned by the Court's Electronic Case Management/Filing System.

Defendants' failure to plead it prior to the close of discovery and raising it for the first time in their Cross-Motion is an undue delay. Moreover, to give Defendants a second bite at the apple, at this late stage of the proceeding, would no doubt be unfairly prejudicial to Plaintiff who would be forced to re-open discovery in order to prove exhaustion, and may well now be precluded from remedying any procedural errors at the administrative level in order to perfect his attempts at exhaustion that may have been available had Defendants interposed the defense in a timely manner. *See Walton v. Breeyear*, 2007 WL 446010, at *8 (N.D.N.Y. Feb. 8, 2007) (finding defendants had waived the affirmative defense of failure to exhaust by not raising the defense until the motion for summary judgment stage); *Mendez v. Barlow*, 2008 WL 2039499, at *5–6 (W.D.N.Y. May 12, 2008) (refusing to allow defendants to amend their Answer to include affirmative defense of failure to exhaust where defendants could show no good cause for their delay and the issue of exhaustion was apparent from the face of the complaint); *Bonilla v. Janovick*, 2005 WL 61505, at *2 (collecting cases); *Calvert v. State of New York*, 2009 WL 3078864, at *6 (W.D.N.Y. Sept. 24, 2009) (denying leave to amend where "[d]efendants did not request the extension prior to the deadline, and have not shown good cause for the extension"); *Thomas v. Keyser*, 2004 WL 1594865, at *3 (S.D.N.Y. July 16, 2004) (denying as untimely defendants' request for leave to amend in order to interpose an exhaustion defense, in part, because requiring plaintiff to re-open discovery constituted unfair prejudice).

Therefore, we recommend that Defendants' request for leave to amend their Answer be **DENIED**.

### B. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525–26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier*

*Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

When considering cross-motions for summary judgment, a court "'must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Hotel Emps. & Rest. Emps. Union, Local 100 of N.Y. v. City of N.Y. Dep't of Parks & Recreation*, 311 F.3d 534, 543 (2d Cir. 2002) (quoting *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993)). "[N]either side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it . . . [and] a district court is not required to grant judgment as a matter of law for one side or the other." *Heublein, Inc. v. United States*, 996 F.2d at 1461.

### C. Background

Given the parties' widely divergent and conflicting accounts of the events preceding the instant action we feel it prudent to summarize each parties account separately.

1. Plaintiff's Account

According to Plaintiff, on July 1, 2009, Plaintiff was placed in Observation Cell # 5 in the Infirmary at UCF because he had not eaten in three days. Dkt. No. 34, Jeffrey Collins Aff., dated July 3, 2012, at ¶¶ 2–3.[3] While in Observation Cell # 5, a nurse alleged that Plaintiff was harming himself and obtained orders to have him moved to a Mental Health Observation Unit. *Id.* at ¶¶ 3–4. At approximately 7:00, Plaintiff was moved from Cell # 5 to Cell # 9 in the Mental Health Unit. *Id.* at ¶ 5. Thereafter, while removing Plaintiff's handcuffs, an unidentified Correction Officer ("C.O.") leaned into the Plaintiff and caused him to hit his head into the wall. *Id.* at ¶ 6. Plaintiff was then "brought to the floor and [his] clothes were cut off of [his] body." *Id.* at ¶ 7. Thereafter, a Nurse and a C.O. standing at the window of the cell asked Plaintiff if he suffered any injuries, and Plaintiff held up his wrists "which were hurting due to the pressure that was applied." *Id.* at ¶ 9. Photos of Plaintiff's wrists were taken through the window, but neither the nurse nor the officer entered Plaintiff's cell. *Id.* at ¶ 10. Thereafter, Plaintiff walked around his cell until he became tired and cold, at which point he laid down between the heater and the bedframe and fell asleep. *Id.* at ¶ 11.

At approximately 9:30 pm, Plaintiff was awakened by Defendant Sergeant Caron, who was standing on the bed frame and kicking Plaintiff in his face, side and back, while Defendant C.O. McGaw[4] was grabbing his dread locks and hitting him in the face, at the same time a third officer (presumably Defendant John Doe) kicked him from the other side of the bed. Collins Aff. at ¶¶

---

[3] Plaintiff's Motion for Summary Judgment includes a Notice of Motion, Statement Pursuant to Rule 7.1, an Affidavit, and a Memorandum of Law, these separate documents are consolidated together in a single document and continuously paginated, Plaintiff's Affidavit starts on page 3 of the larger document. Dkt. No. 34.

[4] Although Plaintiff refers to this Defendant as J. Gaw, Defendant reports his own name as J. McGaw in his Declaration, therefore we will refer to him as such. *See* Dkt. No. 37-21, Jeffrey McGaw Decl., dated Sept. 24, 2012.

11–12; Dkt. No. 44, Pl.'s Mem. of Law at pp. 3–4. Plaintiff further avers that Defendant Marsh was sitting at his desk outside of Plaintiff's Cell before he went to sleep, and he was sitting at his desk after the attackers fled his cell. Dkt. No. 37-6, Jeffrey Collins Dep. (hereinafter "Collins Dep."), dated Apr. 19, 2012, at pp. 50–52. Plaintiff was not afforded any medical attention after the incident. Dkt. No. 44, Pl.'s Mem. of Law at p. 4. The next morning Plaintiff asked Superintendent J. Bellnier[5] to have someone photograph his injuries. *Id.* at p. 5. A couple of hours later, an officer interviewed Plaintiff about the incident and took pictures of his "injuries." *Id.*; *see also* Dkt. No. 37-15, Pictures of Pl., dated July, 2, 2009, at pp. 51–52, & 56–66.

## 2. Defendants' Account

The Defendants agree as to why Plaintiff was moved to the Infirmary (not eating nine meals), and that by 7:00 pm, Plaintiff had been moved from Cell # 5 to Cell # 9 in the Office of Mental Health ("OMH") Special Watch Area for one-on-one observation due to allegations of self harm. Dkt. No. 37-1, Defs.' Mem. of Law at pp. 5–6; Dkt. No. 37-15, Ex. F, at p.1, Unusual Incident Report, dated July 29, 2012. The parties also agree that a strip search was conducted thereafter, and that C.O.s used force in order to complete the search. Dkt. Nos. 37-1, Defs.' Mem. of Law at p. 6; & 37-15, Ex. F at p. 1. According to their reports, after placing Plaintiff in Cell # 9 and removing his restraints, Plaintiff began to "BANG HIS HEAD OFF THE WALL," several C.O.s then forced Plaintiff to the floor, and applied body holds and mechanical restraints to Plaintiff's legs and arms in order to "GAIN CONTROL" of Plaintiff, and then Plaintiff was instructed to comply with "A REQUIRED STRIP FRISK, WHICH [PLAINTIFF] REFUSED." Dkt. No. 37-15, Ex. F at p. 1. Other records submitted by Defendants confirm Plaintiff's assertion that at approximately 7:25 pm,

---

[5] Superintendent Bellnier is not a named Defendant in this action.

a nurse, viewing Plaintiff from the cell door, examined Plaintiff and reported "NO INJURIES NOTED AT THIS TIME." *Id.* at p. 8, Use of Force Report, dated Aug. 4, 2009.

The most material departure between the parties accounts is that Defendants deny that any further physical force was ever used against Plaintiff, specifically that no assault occurred at 9:30 p.m. on July 1, 2009. Defendant Marsh was on Special Watch duty on July 1, 2009, and was observing Plaintiff and another inmate's cell between 7:15 p.m. and 10:00 p.m. and documenting their activities in 15 minute increments in the Infirmary's Special Watch Log. Dkt. No. 37-18, Brian Marsh Decl., dated Sep. 26, 2012, at ¶¶ 2–3. In addition to registering the activities of the inmates, all staff who enter an inmate's cell in the watch area are required to sign the Special Watch Log. *Id.* at ¶ 3. According to Defendant Marsh "none of the individuals who were allegedly involved in the assault entered any inmate's cell in the OMH watch area at or near the time the assault was alleged to occur." *Id.* at ¶ 5. And, there are no signatures in the Special Watch Log suggesting that any officer visited Plaintiff's cell that night. Dkt. No. 37-19, Portions of Infirmary Special Watch Log (hereinafter "Watch Log"), dated July 1–2, 2009. However, Defendant Marsh does admit that Defendant Caron was in the Infirmary at approximately 9:15 p.m., only to get a soda, and although he spoke to Plaintiff, he never entered his cell. Marsh Decl. at ¶ 6. According to Defendant Marsh's entries in the Special Watch Log, between 9:15 p.m. and 9:50 p.m., Plaintiff was looking out the window of his cell door. *Id.* at ¶ 9; Watch Log.

Defendants also note that throughout the day on July 1, Plaintiff had been found inflicting harm on himself by banging his head against objects and surfaces in his cell. Marsh Decl. at ¶ 9; Dkt. No. 37-1, Defs.' Mem. of Law at pp. 7–8; Watch Log; Dkt. No. 37-15, Ex. F at p. 1.

## D. Eighth Amendment

The Eighth Amendment prohibits the infliction of cruel and unusual punishment and is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660, 666–67 (cited in *Tramell v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003)). In *Hudson v. McMillian*, 503 U.S. 1 (1992), the Supreme Court clarified the standards for determining whether an Eighth Amendment violation occurred in the context of excessive force. Specifically, the Court stated that, "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley* [*v. Albers*, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." 503 U.S. at 6–7 (quoted in *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994)). To validly assert a violation of the Eighth Amendment through the use of excessive force, an inmate must prove two components: (1) objectively, that the defendant's actions violated "contemporary standards of decency," and (2) subjectively, that the defendant acted wantonly and in bad faith. *Blyden v. Mancusi*, 186 F.3d 252, 262–63 (2d Cir. 1999) (internal quotation marks and citations omitted).

Regarding the objective element, we note initially that "a *de minimis* use of force will rarely suffice to state a constitutional claim[.]" *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993). In that respect, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) (quoted in *Hudson v. McMillian*, 503 U.S. at 10). However, the malicious use of force to cause harm constitutes an Eighth Amendment violation *per se* because in such instances "contemporary standards of decency always are violated." *Blyden v. Mancusi*, 186 F.3d at 263

(citing *Hudson v. McMillian*, 503 U.S. at 9). For example, "when a prison guard applies force against a prisoner that poses no reasonable threat simply because the guard loses his or her temper and wishes to wantonly inflict pain on the prisoner, a per se violation of the Eighth Amendment occurs." *Beckford v. Portuondo*, 151 F. Supp. 2d 204, 216 (N.D.N.Y. 2001) (citation omitted).

In assessing the objective component, the court should consider the seriousness of the injury, however, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury;" thus, "the seriousness of the injury is relevant to the Eight Amendment inquiry, but does not end it." *Davidson v. Flynn*, 32 F.3d 27, 29–30 n.1 (2d Cir. 1994) (alterations in original) (quoting *Hudson v. McMillian*, 503 U.S. at 4).

With regard to the subjective component, a court should consider whether the defendant had a wanton state of mind when engaging in the alleged misconduct. To determine whether a defendant acted wantonly or maliciously, several factors should be examined, including

> the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by defendants to temper the severity of a forceful response.

*Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks and citations omitted); *see also Hudson v. McMillian*, 503 U.S. at 7).

Defendants argue that Plaintiff was not assaulted at or about 9:30 pm, and alternatively that even if he was, Plaintiff's injuries (bruising) are *de minimus* and therefore cannot support an excessive use of force claim. Dkt. No. 37-1, Defs.' Mem. of Law at pp. 11–12. As Defendants have noted "Plaintiff's complaint, as clarified by his deposition testimony, alleges that after he was taken to the infirmary . . . [Defendants] entered his room while he was sleeping on the floor and began to punch and kick him for no apparent reason." *Id.* at p. 5. Such accusations, if true, allege unconstitutional excessive force *per se*, and thus we need not concern ourselves with the extent of

Plaintiff's injuries because in such instances "contemporary standards of decency always are violated." *Blyden v. Mancusi*, 186 F.3d at 263 (internal quotation marks and citations omitted); *see also Beckford v. Portuondo*, 151 F. Supp. 2d at 216.

Thus, the only real issue in this case is whether or not an assault occurred at all at 9:30 p.m. on July 1, a point to which the parties have presented materially divergent evidence. Defendants claim that Plaintiff's self serving accusations, alone, are insufficient as a matter of law to substantiate his claims. Dkt. No. 37-1, Defs.' Mem. of Law at p. 12. However, Defendants fail to take into account that in addition to Plaintiff's accusations, we have the photographs taken of Plaintiff by Defendants on July 2, 2009, the day after the alleged assault. *See* Dkt. No. 37-15, at pp. 51–52, & 56–66. These photos clearly show bruises on Plaintiff's arms, ribs, and back. *See e.g., id.* at pp. 59, 60, & 64. Granted, according to Defendants, Plaintiff had been inflicting injuries upon himself on July 1 by banging his head into various surfaces, and at approximately 7:00 p.m., officers had to use force in order to restrain and strip search Plaintiff. *See* Dkt. No. 37-8, Ex. C, at p. 1; Marsh Decl. at ¶ 9. Yet, Plaintiff's act of banging his head would not explain the bruises on his back, arms and ribs. Moreover, Defendants' own documents show that at 7:25 p.m. – two hours before Plaintiff alleges he was assaulted – after force was used during the strip search, a nurse examined Plaintiff (albeit from outside the cell) and noted that he had no injuries. *See* Dkt. No. 37-8, Ex. C, p. 2.

Thus, we find that a trier of fact reviewing the record before us could reasonably conclude that if Plaintiff had no injuries at 7:25 p.m., immediately after force was used in conjunction with the strip search, but had significant bruising on his body the following day, that an assault such as the Plaintiff has described may indeed have occurred. We also find that it would be equally

reasonable for a trier of fact reviewing the very same evidence to conclude that the bruising on Plaintiff's body was caused by the force used during the strip search earlier in the evening and that the bruising simply had not yet materialized by 7:25 p.m. when the nurse examined Plaintiff. Thus, because this issue presents a genuine question of material fact, which precludes us from finding for either party at this stage, we recommend that both Plaintiff's Motion for Summary Judgment and Defendants' Cross-Motion for Summary Judgment as to Plaintiff's excessive force claim be **DENIED**.

### E. Failure to Protect

A prison inmate has a constitutional right under the Eighth and Fourteenth Amendments to be free from the "unnecessary and wanton infliction of pain." *Hendricks v. Coughlin*, 942 F.2d 109, 112 (2d Cir.1991) (citation omitted). "The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994)); *see Heisler v. Kralik*, 981 F. Supp. 830, 837 (S.D.N.Y. 1997) ("[P]rison officials have a constitutional duty to act reasonably to ensure a safe environment for a prisoner when they are aware that there is a significant risk of serious injury to that prisoner."); *see also Avincola v. New York State Dep't of Corr. Servs.*, 1998 WL 146280, at *3 (N.D.N.Y. Mar. 27, 1998).

In order to state such a claim, the prisoner must demonstrate that the prison officials "acted with deliberate indifference with respect to his safety or with an intent to cause harm to him[.]" *Hendricks v. Coughlin*, 942 F.2d at 113. A showing of mere negligence on behalf of the defendants is not enough to state a constitutional claim. *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (cited in *Hendricks v. Coughlin*, 942 F.2d at 113). The key element of a failure to protect claim is the

existence or potential existence of a substantial risk of serious harm and not the actual harm which may or may not ensue. *Farmer v. Brennan*, 511 U.S. at 835–36. To prove deliberate indifference, the plaintiff must show that the "official [knew] of and disregard[ed] an excessive risk to inmate health or safety[.]" *Id*. at 837 (cited in *Ramirez v. Mantello*, 1998 WL 146246, at *2 (N.D.N.Y. Mar. 24, 1998)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he must also draw the inference." *Id.* (emphasis added).

Here, notwithstanding Defendants' argument that no assault occurred, they argue alternatively that Defendant Marsh was seated at his desk and therefore did not observe the incident or have an opportunity to intervene on Plaintiff's behalf. Dkt. No. 37-1, Defs.' Mem. of Law at p. 15. We find this argument unpersuasive. To begin with, Defendant Marsh has admitted that between 7:15 p.m. and 10:00 p.m., he was watching over and reporting, in fifteen minute increments, the behavior of Plaintiff and one other inmate on July 1, 2009. Marsh Decl. at ¶¶ 2–3. Plaintiff similarly alleged that Defendant Marsh was sitting outside of his cell when he fell asleep, and was also sitting at his desk after the assault ended. Collins Dep. at pp. 50–52. Based on these allegations alone, it would be perfectly reasonable for a juror to find that Defendant Marsh was not only present during the alleged assault but he would have had every reason to investigate and record the sudden appearance of three guards who entered a Special Watch inmate's cell without signing the Log and remained therein. Furthermore, it would be equally reasonable for that juror to find that once Defendant Marsh began to investigate, he would have been aware of the civil rights abuse(s) taking place and had time to intervene on Plaintiff's behalf. *See Farmer v. Brennan*, 511 U.S. at 837. Therefore, we recommend that Defendants' Cross-Motion for Summary Judgment as to Plaintiff's failure to protect claim against Defendant Marsh be **DENIED.** Moreover, if a fact finder determined

that no assault occurred on July 1, 2009, then Defendant Marsh would have had no occasion to protect Plaintiff, and thus Plaintiff's claim in this regard would necessarily fail. Therefore, we also recommend that Plaintiff's Motion for Summary Judgment be **DENIED** as to his failure to protect claim against Defendant Marsh.

### G. Personal Involvement

The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Plaintiff's sole allegations against Defendant Stout are based on his unsubstantiated suspicion that R.N. Stout ordered the other Defendants to assault him in retaliation for grievances he filed against her regarding the quality of the medical treatment he was receiving. *See* Collins Dep. at pp. 37–38 (Plaintiff admits that although he never saw or heard Defendant Stout speaking with the Defendants that allegedly assaulted him, he just knew she ordered the assault). Defendant Stout expressly denies having any involvement or connection to the alleged assault. Dkt. No. 37-22, Jacqueline Stout Decl., dated Sept. 19, 2012, at ¶¶ 5–6. Notwithstanding the fact that Plaintiff had filed grievances against Defendant Stout, *see id.*, his unsubstantiated claims that she ordered the assault, are simply too tenuous to support a claim against her. *See Brown v. Artus*, 647 F. Supp. 2d 190, 200 (N.D.N.Y. 2009) ("In the face of his express denial of knowledge or responsibility, plaintiff's conclusory allegations to the effect that defendant Artus 'sanctioned, ratified, condoned and participated' in the assault are insufficient to raise an issue of fact and to avoid summary

judgment") (citing *Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002); *see also Russo v. City of Bridgeport*, 479 F.3d 196, 210–11 (2d Cir. 2007). Therefore, because Plaintiff has failed to make any factual allegations which could reasonably support an inference that Defendant Stout was somehow personally involved in the alleged assault, we recommend that she be **DISMISSED** from this action.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Plaintiff's Motion for Summary Judgment (Dkt. No. 34) be **DENIED**; and it is further

**RECOMMENDED** that Defendants' Cross-Motion for Summary Judgment (Dkt. No. 37) be **DENIED** as to Plaintiff's claims for excessive use of force and failure to protect, and **GRANTED** as to Defendant Stout who should be **DISMISSED** from this action for lack of personal involvement; and it is further

**ORDERED**, that Defendants' Motion for Leave to Amend, (Dkt. No. 45) is denied; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. §

636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: February 19, 2013
      Albany, New York

_____
Randolph F. Treece
U.S. Magistrate Judge