UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JEFFREY COLLINS,

                Plaintiff,

v.

                                  9:10-CV-1527
                                  (GTS/RFT)

SERGEANT CARON, Upstate Corr. Facility;
MARSH, Corr. Officer, Upstate Corr. Facility;
J. McGAW, Corr. Officer, Upstate Corr. Facility; and
JOHN DOE, Corr. Officer, Upstate Corr. Facility,

                Defendants.
_____

APPEARANCES:                                               OF COUNSEL:

NIXON PEABODY LLP                            DANIEL J. HURTEAU, ESQ.
  Pro Bono Trial Counsel for Plaintiff
677 Broadway, 10th Floor
Albany, New York 12207

HON. ERIC T. SCHNEIDERMAN           LAURA A. SPRAGUE, ESQ.
Attorney General for the State of New York    Assistant Attorney General
  Counsel for Defendants
The Capitol
Albany, New York 12224

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

       An evidentiary hearing in this prisoner civil rights action, filed *pro se* by Jeffrey Collins ("Plaintiff") pursuant to 42 U.S.C. § 1983, was held on October 29, 2013, before the undersigned. The hearing regarded the affirmative defense of the four above-described New York State correctional employees ("Defendants") that Plaintiff failed to exhaust his available administrative remedies, as required by the Prison Litigation Reform Act, before filing this action on December 9, 2010. At the two-hour-long hearing, documentary evidence was

admitted. In addition, testimony was taken of Plaintiff as well as two defense witness (Upstate Correctional Facility Inmate Grievance Program Supervisor Scott Woodward, and New York State Department of Corrections and Community Supervision Inmate Grievance Program Director Karen Bellamy) whom Plaintiff was able to cross-examine through an experienced *pro bono* trial counsel. At the conclusion of the hearing, the undersigned indicated that a written decision would follow. This is that written decision. For the reasons stated below, Plaintiff's Second Amended Complaint is dismissed without prejudice because of his failure to exhaust his available administrative remedies before filing this action.

I.   **RELEVANT LEGAL STANDARD**

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under §1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e. The PLRA was enacted "to reduce the quantity and improve the quality of prisoner suits" by "afford[ing] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). In this regard, exhaustion serves two major purposes. First, it protects "administrative agency authority" by giving the agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Second, exhaustion promotes efficiency because (a) "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal

2

court," and (b) "even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration." *Woodford*, 548 U.S. at 89.[1] "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

In accordance with the PLRA, the New York State Department of Corrections and Community Supervision ("DOCCS") has made available a well-established inmate grievance program. 7 N.Y.C.R.R. § 701.7. Generally, the DOCCS Inmate Grievance Program ("IGP") involves the following three-step procedure for the filing of grievances. 7 N.Y.C.R.R. §§ 701.5, 701.6(g), 701.7.[2] First, an inmate must file a complaint with the facility's IGP clerk within a certain number of days of the alleged occurrence.[3] If a grievance complaint form is not readily available, a complaint may be submitted on plain paper. A representative of the facility's inmate grievance resolution committee ("IGRC") has a certain number of days from receipt of the grievance to informally resolve the issue. If there is no such informal resolution, then the full IGRC conducts a hearing within a certain number of days of receipt of the grievance, and issues a written decision within a certain number of days of the conclusion of the hearing. Second, a

---

[1] In addition, a third purpose of the PLRA has been identified by the Second Circuit: "to curtail what Congress perceived to be inmate abuses of the judicial process." *Ortiz v. McBride*, 380 F.3d 649, 658 (2d Cir. 2004).

[2] *See also Murray v. Palmer,* 03-CV-1010, 2010 WL 1235591, at *1 & n.1 (N.D.N.Y. March 31, 2010) [citation omitted].

[3] The Court uses the term "a certain number of days" rather than a particular time period because (1) since the three-step process was instituted, the time periods imposed by the process have changed, and (2) the time periods governing any particular grievance depend on the regulations and directives pending during the time in question.

grievant may appeal the IGRC decision to the facility's superintendent within a certain number of days of receipt of the IGRC's written decision. The superintendent is to issue a written decision within a certain number of days of receipt of the grievant's appeal. <u>Third</u>, a grievant may appeal to the central office review committee ("CORC") within a certain number of days of receipt of the superintendent's written decision. CORC is to render a written decision within a certain number of days of receipt of the appeal.

Moreover, there is an expedited process for the review of complaints of inmate harassment or other misconduct by corrections officers or prison employees. 7 N.Y.C.R.R. § 701.8. In the event the inmate seeks expedited review, he or she may report the misconduct to the employee's supervisor. The inmate then files a grievance under the normal procedures outlined above, but all grievances alleging employee misconduct are given a grievance number, and sent immediately to the superintendent for review. Under the regulations, the superintendent or his designee shall determine immediately whether the allegations, if true, would state a "bona fide" case of harassment, and if so, shall initiate an investigation of the complaint, either "in-house," by the Inspector General's Office, or by the New York State Police Bureau of Criminal Investigations. An appeal of the adverse decision of the superintendent may be taken to the CORC as in the regular grievance procedure. A similar "special" procedure is provided for claims of discrimination against an inmate. 7 N.Y.C.R.R. § 701.9.

It is important to note that these procedural requirements contain several safeguards. For example, if an inmate could not file such a complaint within the required time period after the alleged occurrence, he or she could apply to the facility's IGP Supervisor for an exception to the time limit based on mitigating circumstances. If that application was denied, the inmate could

4

file a complaint complaining that the application was wrongfully denied.[4] Moreover, any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can–and must–be appealed to the next level, including CORC, to complete the grievance process. 7 N.Y.C.R.R. § 701.6(g)(2) ("Absent [an] extension, matters not decided within the time limits may be appealed to the next step.").[5]

In light of the plain language of 7 N.Y.C.R.R. § 701.6(g)(2), the Second Circuit has indicated that the IGRC's nonresponse must be appealed to the superintendent even where the plaintiff's grievance was never assigned a grievance number.[6] Moreover, this point of law has been expressly recognized by district courts in the Northern District,[7] Southern District,[8] and

---

[4] *See Murray v. Palmer,* 03-CV-1010, 2010 WL 1235591, at *2 & n.3 (N.D.N.Y. March 31, 2010) (citing *Groves v. Knight*, 05-CV-0183, Decision and Order at 3 [N.D.N.Y. filed Aug. 4, 2009], an appeal from which was subsequently dismissed as frivolous, *see Groves v. Knight*, No. 09-3641, Mandate [2d Cir. filed Jan. 15, 2010].)

[5] *See also Murray,* 2010 WL 1235591, at *2 & n.4 [collecting cases].

[6] *See Hernandez v. Coffey*, 582 F.3d 303, 305, 309, n.3 (2d Cir. 2009) ("Our ruling in no way suggests that we agree with Hernandez's arguments regarding exhaustion or justification for failure to exhaust [which included an argument that the Inmate Grievance Program was not available to him because, when he filed a grievance at the first stage of the Program, he received no response and his grievance was not assigned a grievance number].").

[7] *See, e.g., Rosado v. Fessetto*, 09-CV-0067, 2010 WL 3808813, at *7 (N.D.N.Y. Aug. 4, 2010) (Baxter, M.J.) ("Courts have consistently held . . . that an inmate's general claim that his grievance was lost or destroyed does not excuse the exhaustion requirement."), *adopted by* 2010 WL 3809991 (N.D.N.Y. Sept. 21, 2010) (Hurd, J.); *Murray v. Palmer*, 03-CV-1010, 2008 WL 2522324, at *15, 18 & n.46 (N.D.N.Y. June 20, 2008) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.) ("[E]ven if Great Meadow C.F. did not . . . have a functioning grievance-recording process (thus, resulting in Plaintiff's alleged grievance never being responded to), Plaintiff still had the duty to appeal that non-response to the next level."), *accord*, *Midalgo v. Bass*, 03-CV-1128, 2006 WL 2795332, at *7 (N.D.N.Y. Sept.26, 2006) (Mordue, C.J., adopting Report-Recommendation of Treece, M.J.) (observing that plaintiff was "requir[ed]" to seek an appeal to the superintendent, even though he never received a response to his grievance of April 26, 2003, which was never assigned a grievance number); *cf. Croswell v. McCoy*, 01-CV-0547, 2003 WL 962534, at *4 (N.D.N.Y. March 11, 2003) (Sharpe, M.J.) ("If a plaintiff receives no response to a grievance and then fails to appeal it to the next level, he has

Western District.⁹ The Court notes that, if the plaintiff attaches to his appeal a copy of his grievance (or even if he adequately describes, in his appeal to the superintendent, the substance of that grievance), there is something for the superintendent to review.¹⁰

---

failed to exhaust his administrative remedies as required by the PLRA.").

⁸ *See, e.g.,Walters v. Carpenter*, 2004 WL 1403301, at *3 (S.D.N.Y. June 22, 2004); *Veloz v. New York*, 339 F. Supp.2d 505, 515-16 (S.D.N.Y. 2004) (rejecting inmate's argument that prison's grievance procedure had been rendered unavailable by the practice of prison officials' losing or destroying his grievances, because, *inter alia*, he should have "appeal[ed] these claims to the next level once it became clear to him that a response to his initial filing was not forthcoming"), *aff'd*, 178 F. App'x 39 (2d Cir. 2006); *Hernandez v. Coffey*, 99-CV-11615, 2003 WL 22241431, at *4 (S.D.N.Y. Sept. 29, 2003) (rejecting plaintiff's argument that he could not have exhausted because he never received a grievance number, finding he could nonetheless have appealed any such non-response to the next level); *cf. Wesley v. Hardy*, 05-CV-6492, 2006 WL 3898199, at *4 (S.D.N.Y. Dec. 12, 2006) ("If a prisoner submits a grievance and receives no response, he cannot be considered to have been actively obstructed or frustrated, as he is free to appeal to the next level of review."), *accord*, *Sims v. Blot*, 00-CV-2524, 2003 WL 21738766, at *3 (S.D.N.Y. July 25, 2003) ("[E]ven if no response is received by an inmate to his grievance within the allotted time period, he may then appeal that grievance (and the absence of a decision thereon) to the next step in the grievance process."); *Hemphill v. New York*, 198 F. Supp.2d 546, 549 (S.D.N.Y. 2002) ("Had plaintiff utilized this procedure, any failure by Artuz to render a decision on his matter within twelve working days could have been appealed to Albany, thus completing the grievance cycle and exhausting his remedies in a matter of weeks."), *vacated and remanded on other grounds*, 380 F.3d 680 (2d Cir. 2004); *Martinez v. Williams*, 186 F. Supp.2d 353, 357 (S.D.N.Y. 2002) ("[P]laintiff now argues in his opposition brief that he filed a grievance in November 1999 and did not receive a response . . . . Plaintiff's argument that he is excused because defendants failed to act with respect to the grievance is unpersuasive. Plaintiff could have and should have appealed the grievance in accordance with grievance procedures."); *Waters v. Schneider*, 01-CV-5217, 2002 WL 727025, at *2 (S.D.N.Y. Apr. 23, 2002) ("Waters alleges that he attempted to file a grievance with the Inmate Grievance Resolution Committee . . . in April 2001 but never received a response. . . . In either case, it is undisputed that Waters did not pursue the available appeals within the prison grievance system.").

⁹ *See, e.g., Collins v. Cunningham,* 06-CV-0420, 2009 WL 2163214, at *3, 6 (W.D.N.Y. July 20, 2009) (rejecting plaintiff's argument that his administrative remedies were not available where his grievance of March 20, 2004, was not assigned a grievance number); *Reyes v. Punzal*, 206 F. Supp.2d 431, 433 (W.D.N.Y. 2002) ("Even assuming that plaintiff never received a response to his grievance, he had further administrative avenues of relief open to him.").

¹⁰ This point of law has been explicitly recognized in some cases. *See, e.g., Goodson v. Silver*, 09-CV-0494, 2012 WL 4449937, at *4 (N.D.N.Y. Sept. 25, 2012) (Suddaby, J.); *accord, Murray,* 2010 WL 1235591, at *2. In addition, it has been implicitly recognized in

It is also important to note that DOCCS has a *separate and distinct* administrative appeal process for inmate misbehavior hearings:

  A. For Tier III superintendent hearings, the appeal is to the Commissioner's designee, Donald Selsky, D.O.C.S. Director of Special Housing/Inmate Disciplinary Program, pursuant to 8 N.Y.C.R.R. § 254.8;

  B. For Tier II disciplinary hearings, the appeal is to the facility superintendent pursuant to 7 N.Y.C.R.R. § 253.8; and

  C. For Tier I violation hearings, the appeal is to the facility superintendent or a designee pursuant to 7 N.Y.C.R.R. § 252.6.

"An individual decision or disposition of any current or subsequent program or procedure having a written appeal mechanism which extends review to outside the facility shall be considered non-grievable." 7 N.Y.C.R.R. § 701.3(e)(1). Similarly, "an individual decision or disposition resulting from a disciplinary proceeding . . . is not grievable." 7 N.Y.C.R.R. § 701.3(e)(2). However, "[t]he policies, rules, and procedures of any program or procedure, including those above, are grievable." 7 N.Y.C.R.R. § 701.3(e)(3); *see also* N.Y. Dep't Corr. Serv. Directive No. 4040.

---

other cases. *See, e,g, Murray*, 2008 WL 2522324, at *15, 18 & n.46 ("[E]ven if Great Meadow C.F. did not . . . have a functioning grievance-recording process (thus, resulting in Plaintiff's alleged grievance never being responded to), Plaintiff still had the duty to appeal that non-response to the next level."); *Midalgo*, 2006 WL 2795332, at *7 (observing that plaintiff was "requir[ed]" to seek an appeal to the superintendent, even though he never received a response to his grievance of April 26, 2003, which was never assigned a grievance number); *Hernandez*, 2003 WL 22241431, at *4 (rejecting plaintiff's argument that he could not have exhausted because he never received a grievance number, finding he could nonetheless have appealed any such non-response to the next level); *Collins*, 2009 WL 2163214, at *3, 6 (rejecting plaintiff's argument that his administrative remedies were not available where his grievance of March 20, 2004, was not assigned a grievance number).

Generally, if a prisoner has failed to properly follow each of the required three steps of the above-described grievance procedure prior to commencing litigation, he has failed to exhaust his administrative remedies, and his claims are subject to dismissal. *Woodford*, 548 U.S. at 93; *Porter*, 534 U.S. at 524; *Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 175 (2d Cir. 2006). However, a plaintiff's failure to exhaust does not end the inquiry. The Second Circuit has held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA. *Hemphill v. State of New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004), *accord*, *Ruggiero*, 467 F.3d at 175. First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill*, 380 F.3d at 686 (citation omitted). Second, if those remedies were available, "the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* [citations omitted]. Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id*. [citations and internal quotations omitted].

With regard to this third inquiry, the Court notes that, *under certain circumstances*, an inmate may exhaust his administrative remedies by raising his claim during a related *disciplinary proceeding*. *Giano v. Goord*, 380 F.3d 670, 678-79 (2d Cir. 2004); *Johnson v. Testman*, 380

F.3d 691, 697 (2d Cir. 2004).[11]  However, in essence, the circumstances in question include instances in which (1) the inmate reasonably believed that his "only available remedy" was to raise his claim as part of a tier disciplinary hearing,[12] *and* (2) the inmate articulated and pursued his claim in the disciplinary proceeding in a manner that afforded prison officials the time and opportunity to thoroughly investigate that claim.[13]  Some district courts have found the first requirement not present where (a) there was nothing objectively confusing about the DOCCS regulations governing the grievability of his claim, (b) the inmate was specifically informed that the claim in question was grievable, (c) the inmate separately pursued the proper grievance process by filing a grievance with the IGRC, (d) by initially alleging that he did appeal his claim to CORC (albeit without proof), the inmate has indicated that, during the time in question, he understood the correct procedure for exhaustion, and/or (e) before and after the incident in

---

[11]  The Court recognizes that the Supreme Court's decision in *Woodford v. Ngo*, 548 U.S. 81 (2006), may have changed the law regarding possible exceptions to the exhaustion requirement (and thus the possibility that exhaustion might occur through the disciplinary process). Specifically, in *Woodford*, the Supreme Court held that the PLRA required "proper" exhaustion as a prerequisite to filing a section 1983 action in federal court. *Woodford*, 548 U.S. at 93. "Proper" exhaustion means that the inmate must complete the administrative review process *in accordance with the applicable procedural rules*, as a prerequisite to bringing suit in federal court. *Id*. at 88-103 (emphasis added). It is unclear whether *Woodford* has overruled any decisions that recognize "exceptions" to the exhaustion requirement. Out of special solicitude to Plaintiff, the Court will assume that *Woodford* has not overruled the Second Circuit's *Giano-Testman* line of cases.

[12]  *Giano*, 380 F.3d at 678 ("[W]hile Giano was required to exhaust available administrative remedies before filing suit, his failure to do so was justified by his reasonable belief that DOCS regulations foreclosed such recourse."); *Testman*, 380 F.3d at 696-98 (remanding case so that district court could consider, *inter alia*, whether prisoner was justified in believing that his complaints in the disciplinary appeal procedurally exhausted his administrative remedies because the prison's remedial system was confusing).

[13]  *Testman*, 380 F.3d at 696-98 (remanding case so that district court could consider, *inter alia*. whether prisoner's submissions in the disciplinary appeals process exhausted his remedies "in a substantive sense" by "afford[ing] corrections officials time and opportunity to address complaints internally"); *see also Murray,* 2010 WL 1235591, at *3 & n. 9 [citing cases].

question, the inmate pursued similar claims through filing a grievance with the IGRC.[14] Other district courts have found the second requirement not present where (a) the inmate's mention of his claim during the disciplinary hearing was so insubstantial that prison officials did not subsequently investigate that claim, and/or (b) the inmate did not appeal his disciplinary hearing conviction.[15]

Finally, two additional points bear mentioning regarding exhaustion hearings. First, the Second Circuit has ruled that a plaintiff in a lawsuit governed by PLRA is not entitled to a jury trial on disputed factual issues relating to his exhaustion of administrative remedies; rather, PLRA exhaustion is a matter of judicial administration. *Messa v. Goord*, 652 F.3d 305, 308-10 (2d Cir. 2011). Second, given that non-exhaustion is an affirmative defense, the defendant bears the burden of showing that a prisoner has failed to exhaust his available administrative remedies.[16] However, once a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those administrative remedies, the plaintiff must then "counter" the defendant's assertion by showing exhaustion, unavailability, estoppel, or "special circumstances."[17] As a result, practically speaking, while the burden on this affirmative defense remains at all times on the defendant, the plaintiff may sometimes have to adduce evidence in order to defeat it.

---

[14] *Murray,* 2010 WL 1235591, at *3 & nn.10-14 [citing cases].

[15] *Id.* at *3 & nn.15-16 [citing cases].

[16] *Id.* at *4 [citation omitted].

[17] *Id.* at *4 & n.17 [citing cases].

## II. ANALYSIS

### A. Availability of Administrative Remedies

After carefully considering the evidence submitted at the exhaustion hearing, the Court finds that Plaintiff did not file a grievance regarding the assault alleged in this action, despite the fact that administrative remedies were available to Plaintiff during the time in question. The Court makes this finding for the following five reasons.

First, Defendants have adduced admissible evidence establishing that Plaintiff did not file a grievance regarding the assault alleged in this action, nor did he pursue any such grievance to CORC. (*See, e.g.,* Hrg. Tr. at 5, 12, 31-32, 34-36; Hrg. Exs. D-2, D-3; *cf.* Dkt. No. 8, at ¶ 53, 55-57, 60; Hrg. Exs. P-2, P-4, P-5, P-6.)

Second, Defendants have adduced admissible evidence establishing that, during the time in question, an inmate grievance program was in existence at Upstate Correctional Facility ("Upstate C.F."). (Hrg. Tr. at 5-11, 24; Hrg. Exs. D-1, D-2, D-4.)

Third, Defendants have adduced admissible evidence establishing that, during the time in question, Plaintiff was advised of Directive 4040 each time he was received at a correctional facility, had access to Directive 4040, and was aware of the inmate grievance program at Upstate C.F. (Hrg. Tr. at 41-42, 48-49, 54-55, 60-61, 63, 71-72; Hrg. Exs. D-3, D-4.) For example, Plaintiff filed grievances at Upstate C.F. on March 20, 2009, and April 1, 2009. (Hrg. Ex. D-3; Hrg. Tr. at 71-72.) Similarly, Plaintiff had filed grievances at another correctional facility on August 29, 2006, October 13, 2006, January 19, 2007, and February 18, 2009. (Hrg. Ex. D-3; Hrg. Tr. at 30-32, 54, 73.) Moreover, in his Verified Second Amended Complaint, Plaintiff swore that, during the time in question, he was aware of (1) the need to file a grievance, and (2) the office at Upstate C.F. to which to submit that grievance. (Dkt. No. 8, at ¶¶ 51-58.)

11

Fourth, Defendants have adduced admissible evidence establishing that the inmate grievance program at Upstate C.F. was working during the time in question. (Hrg. Tr. at 11-12, 38-41, 43-45; Hrg. Ex. D-2.) For example, on March 20, 2009, and April 1, 2009, Plaintiff filed grievances at Upstate C.F., which he subsequently pursued all the way to CORC. (Hrg. Ex. D-3; Hrg. Tr. at 71-72.) Indeed, between July 5, 2009, and July 20, 2009, forty-one other staff misconduct grievances were successfully filed at Upstate C.F. (Hrg. Ex. D-2; Hrg. Tr. at 11-12.)

Fifth, the Court finds the relevant portions of Plaintiff's hearing testimony (i.e., that he mailed grievances to the grievance office on July 6, 2009, July 16, 2009, and July 19, 2009, which were lost or destroyed during mailing or processing) to be incredible due to various admissions, omissions and/or inconsistencies in that testimony, and his demeanor during his testimony. (Hrg. Exs. P-1, P-2, P-3; Hrg. Tr. at 3-22, 47-80.)

B. **Forfeiture/Estoppel**

After carefully considering the evidence submitted at the exhaustion hearing, the Court finds that Defendants did not forfeit the affirmative defense of non-exhaustion by failing to raise or preserve it, or that Defendants are estopped from raising the defense by taking actions that inhibited Plaintiff's exhaustion of remedies.

With regard to the forfeiture issue, Defendant's Amended Answer asserted this affirmative defense, and Plaintiff's counsel made no argument regarding forfeiture at the hearing. (Dkt. No. 50, at ¶ 18; *see generally* Hr. Tr. 80-87.)

Moreover, Plaintiff failed to offer any credible evidence at the hearing that *Defendant* in any way interfered with Plaintiff's ability to file a grievance during the time in question. (*See, e.g.,* Hrg. Tr. at 51-52, 72-73.) A defendant in a prisoner civil rights action may not be estopped from asserting the affirmative defense of failure to exhaust administrative remedies (for purposes

12

of the second part of the three-part inquiry established by the Second Circuit) based on the actions or inactions of *other* individuals. This point of law is clear from Second Circuit cases.[18] Furthermore, this point of law has been relied on by district courts in the Northern District,[19]

---

[18] *See Amador v. Andrews*, 655 F.3d 89, 102 (2d Cir. 2011) ("The second part considers whether defendants forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether defendants' *own* actions inhibiting the inmate's exhaustion of remedies estops one or more of the defendants from raising the exhaustion defense.") (emphasis added); *Ruggiero v. Cnty. of Orange,* 467 F.3d 170, 178 (2d Cir. 2006) ("In our prior cases recognizing that *defendants' actions* may estop them from raising non-exhaustion as a defense . . . . Ruggiero does not allege beatings or threats of retaliation for filing a grievance or that he made any attempt to file a grievance and was denied that opportunity *by Defendants-Appellants*.") (emphasis added); *Hemphill v. New York*, 380 F.3d 680, 689 (2d Cir. 2004) (explaining that, where several defendants played different roles in the acts giving rise to estoppel, "it is possible that some individual defendants may be estopped, *while other may not be*") (emphasis added).

[19] *See, e.g., Belile v. Griffin*, 11-CV-0092, 2013 WL 1776086, at *9 (N.D.N.Y. Feb. 12, 2013) (Peebles, M.J.), *adopted by* 2013 WL 1291720 (N.D.N.Y. March 27, 2013) (McAvoy, J.); *Bailey v. Fortier,* 09-CV-0742, 2013 WL 310306, at *2 (N.D.N.Y. Jan. 25, 2013) (Sharpe, C.J.); *Thompson v. Bellevue Hosp.*, 09-CV-1038, 2011 WL 4369132, at *12 (N.D.N.Y. Aug. 29, 2011) (Lowe, M.J.), *adopted by* 2011 WL 4369132 (N.D.N.Y. Aug. 29, 2011) (Mordue, C.J.); *Calloway v. Grimshaw*, 09-CV-1354, 2011 WL 4345299, at *4 (N.D.N.Y. Aug. 10, 2011) (Lowe, M.J.), *adopted by* 2011 WL 4345296 (N.D.N.Y. Sep.15, 2011) (McAvoy, J.); *Murray v. Palmer,* 03-CV-1010, 2010 WL 1235591, at *5 & n.26 (N.D.N.Y. March 31, 2010) (Suddaby, J.); *Snyder v. Whittier,* 05-CV-1284, 2009 WL 691940, at *9 (N.D.N.Y. March 12, 2009) (Report-Recommendation of Peebles, M.J., adopted by McAvoy, J.); *Murray v. Palmer*, 03-CV-1010, 2008 WL 2522324, at *19 (N.D.N.Y. June 20, 2008) (Report-Recommendation of Lowe, M.J., adopted by Hurd, J.); *McCloud v. Tureglio*, 07-CV-0650, 2008 WL 1772305, at *12 (N.D.N.Y. Apr. 15, 2008) (Report-Recommendation of Lowe, M.J., adopted by Mordue, C.J.); *Shaheen v. McIntyre*, 05-CV-0173, 2007 WL 3274835, at *16 (N.D.N.Y. Nov.5, 2007) (Report-Recommendation of Lowe, M.J., adopted by McAvoy, J.); *Gill v. Frawley*, 02-CV-1380, 2006 WL 1742378, at *12 (N.D.N.Y. June 22, 2006) (Report-Recommendation by Lowe, M.J., adopted by McAvoy, J.); *Smith v. Woods*, 03-CV-0480, 2006 WL 1133247, at *16 (N.D.N.Y. Apr.24, 2006) (Report-Recommendation of Lowe, M.J., adopted by Hurd, J.).

Southern District,[20] Eastern District,[21] and Western District.[22]

The Court notes that a contrary interpretation of the second part of the Second Circuit's three-part exhaustion inquiry would turn the ancient doctrine of estoppel on its head, transforming it–in Orwellian fashion–into one of "vicarious estoppel." *See Black's Law Dictionary* at 629 (9th ed) (defining "estoppel" as "[a] bar that prevents one from asserting a claim or right that contradicts what one has said or done before . . . ."). Moreover, such an invention would be wholly unnecessary: the vicarious conduct sought to be protected against is already protected against by the "special circumstances" inquiry established by the Second Circuit.

Finally, while it may be argued that such an interpretation of the doctrine of estoppel is nonetheless appropriate because the purpose of the PLRA is to enable the institution to resolve disputes efficiently rather than protect the individual,[23] prisoner civil rights suits are suits against prison officials in their individual capacities rather than suits against them in their official capacities (which would effectively be suits against the State and thus be barred by the Eleventh Amendment). As a result, the crux of the second part of the Second Circuit's three-part exhaustion inquiry is whether the officials may avail themselves of that defense, not whether the institution may avail itself of the defense.

---

[20] *See, e.g., Collins v. Goord*, 438 F. Supp.2d 399, 415, n.16 (S.D.N.Y. 2006).

[21] *See, e.g., McCullough v. Burroughs*, 04-CV-3216, 2005 WL 3164248, at *4 (E.D.N.Y. Nov. 29, 2005).

[22] *See, e.g., Barad v. Comstock*, 03-CV-0736, 2005 WL 1579794, at *6 (W.D.N.Y. June 30, 2005).

[23] For the sake of brevity, the Court will set aside the fact that this argument ignores the fact that there are two other purposes for the PLRA (i.e., to produce a useful record for subsequent judicial consideration, and to curtail what Congress perceived to be inmate abuses of the judicial process). *See, supra,* Part I of this Decision and Order.

## C. Special Circumstances

After carefully considering the issue, the Court finds that there exists no special circumstances justifying Plaintiff's failure to comply with the administrative procedural requirements. Construed with the utmost of special leniency, Plaintiff's hearing testimony, and his counsel's cross-examination of Defendants' witness, raise the specter of four excuses for not having exhausted his available administrative remedies before he filed this action on December 9, 2009: (1) Plaintiff reasonably misunderstood the grievance process to permit him to appeal the non-processing of his grievances directly to CORC on July 28, 2009; (2) Plaintiff's letter of August 30, 2009, to the Superintendent of Elmira Correctional Facility ("Elmira C.F.") notifying him that Plaintiff "would like to have [his] appeal sent to" CORC completed the exhaustion process; (3) Plaintiff's contact with the Inspector General's Office in September of 2009 completed the exhaustion process; and (4) Plaintiff's initial exchange of correspondence with the office of the Superintendent of Upstate C.F. between July 5, 2009, and July 12, 2009, satisfied the pre-appeal exhaustion process.

With regard to Plaintiff's first excuse (i.e., that he reasonably misunderstood the grievance process to permit him to appeal the non-processing of his grievances directly to CORC), the Court finds that this excuse does not suffice for two alternative reasons: (1) he does not credibly argue that he misunderstood the need to first appeal to the facility superintendent; and (2) any such misunderstanding of the proper grievance process was not reasonable, given that (a) the language of 7 N.Y.C.R.R. § 701.6(g)(2) clearly stated this part of the process,[24] (b) Plaintiff possessed copies of his grievances that he could have sent to the superintendent, and (c) by the time in question, Plaintiff had been incarcerated in the New York State Department of

---

[24] *See, supra,* Part I of this Decision and Order.

Corrections and Community Supervision for some 16 years, and had filed numerous grievance appeals. (*See* Hrg. Ex. D-3; Hrg. Tr. at 30-32, 47-80.) *See also* 7 N.Y.C.R.R. § 701.6(g)(2) ("Absent [an] extension, matters not decided within the time limits may be appealed to the next step."). With regard to the first reason, the Court notes that, when asked why he wrote directly to CORC, Plaintiff responded vaguely as follows: "I found out through, you know, they got like organizations that tell you how to–how to go about things so they told me that if you don't receive responses, you should write directly to the IGP in Albany." (Hrg. Tr. at 59.) Plaintiff does not specify such details as what "organization" gave him this advice, or even that the advice regarded non-responses from *inmate grievant offices* rather than from superintendents. (*Id.*) With regard to the second reason, the Court notes that, for a misunderstanding of the law to constitute a special circumstance, that misunderstanding must be *reasonable*.[25]

With regard to Plaintiff's second excuse (i.e., that his letter of August 30, 2009, to the Superintendent of Elmira C.F. completed the exhaustion process), the Court finds that this excuse does not suffice for three alternative reasons: (a) the subject of the letter of August 30, 2009–i.e., the underlying grievance of August 10, 2009, which was submitted to the inmate grievance office at Upstate C.F.–was untimely and never accepted for filing by the grievance office at Upstate C.F.; (b) the rejection of the underlying grievance of August 10, 2009, at Upstate C.F. needed to be appealed to the Superintendent of *Upstate* C.F., not to the

---

[25] *See Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (explaining that the third or the three caveats for mandatory exhaustion is the existence of "special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement."); *cf. Giano v. Goord*, 380 F.3d 670, 679 (2d Cir. 2004) (finding that special circumstances had been demonstrated because plaintiff's action were the result of "reasonable" confusion about the proper administrative channel through which to pursue his claim); *Johnson v. Testman*, 380 F.3d 691, 696-98 (2d Cir.2004) ( finding that "special circumstances" included plaintiff's "reasonable" but mistaken belief regarding the grievance process).

Superintendent of Elmira C.F.; and (c) Plaintiff never received a denial of his letter of August 30, 2009, nor filed an appeal from any such denial with CORC. (Hrg. Exs. P-6, P-8, P-9; Hrg. Tr. at 23-80.) With regard to the first reason, the Court notes, if exhaustion could be accomplished simply through appealing the denial of a request for leave to file an untimely grievance, then the time deadlines contained in the exhaustion process would lose all meaning. *See Smith v. Kelly*, 06-CV-0505, Decision and Order, at 21 (N.D.N.Y. filed Oct. 30, 2013) (Suddaby, J.) ("It would eviscerate the exhaustion requirement to deem an inmate to have exhausted his available administrative remedies where he files a grievance four-and-a-half years late . . . , then skips the superintendent and appeals the rejection of his grievance (based on untimeliness) to CORC, which never passes on the merits of his grievance. If exhaustion were permissible under such circumstances, every inmate could exhaust his available administrative remedies without fulfilling the functions of the exhaustion requirement . . . ."). As the Supreme Court explained, "We are confident that the PLRA did not create such a toothless scheme." *See Woodford v. Ngo*, 548 U.S. 81, 95 (2006) (reversing Ninth Circuit decision holding that prisoner had exhausted his administrative remedies under the PLRA because none remained available to him after his grievance was rejected as untimely by state prison officials).

With regard to Plaintiff's third excuse (i.e., that his contact with the Inspector General's Office in September of 2009 completed the exhaustion process), the Court finds that this excuse does not suffice for two alternative reasons: (1) it does not appear that the investigation by the Inspector General was upon *referral* from either the Superintendent of Elmira C.F. or the Superintendent of Upstate C.F.; and (2) it does not appear that Plaintiff appealed a finding of unsubstantiation by the Inspector General's Office to CORC. (Hrg. Tr. at 68-80; Hrg. Ex. P-10.) Both of those things are required in order for an inmate's letter to an Inspector General's Office

to complete the exhaustion process. *Goodson v. Silver*, 09-CV-0494, 2012 WL 4449937, at *4, 9 & n.7 (N.D.N.Y. Sept. 25, 2012) (Suddaby, J.) (collecting cases).

With regard to Plaintiff's fourth excuse (i.e., that his initial exchange of correspondence with Upstate C.F. Superintendent in early July 2009 initiated the exhaustion process), the Court finds that this excuse does not suffice for three alternative reasons: (1) an inmate's direct correspondence with the superintendent, bypassing the inmate grievance office, is not a grievance under the governing regulations (nor did that correspondence even contain a copy of his grievance);[26] (2) Plaintiff did not file an appeal (from the Superintendent's response) with CORC within seven days of receiving the response on July 12, 2009, as required by 7 N.Y.C.R.R. § 701.5(a)(1); and (3) in Plaintiff's letter of July 28, 2009, to CORC, he did not attach, or even reference, either his letter of July 5, 2009, to the Superintendent or the Superintendent's response of July 12, 2009, despite possessing copies of both documents. (Hrg. Exs. D-4, D-5, P-4; Hrg. Tr. at 11, 16, 18, 20-21, 32-33, 52, 55, 57.) With regard to the first reason, it should be noted that the regulations clearly provide that, any grievances alleging staff misconduct must be filed under the normal procedure with the grievance office, which will then give the grievance a grievance number and send it immediately to the superintendent for review. 7 N.Y.C.R.R. § 701.8(a),(b). With regard to this third reason, it should be noted that the regulations clearly provide that, if possible, appeals to CORC shall contain, *inter alia*, both the underlying grievance and the superintendent's written response to the grievance. 7 N.Y.C.R.R. § 701.5(d)(1). It should also be noted that, during the time in question, Plaintiff knew how to file

---

[26] Indeed, the correspondence expressly referred to the grievance as a *separate* document, which the superintendent would receive at some point in the future. (Hrg. Ex. D-4 [stating that "You shall receive a grievance concerning a Sgt Caron and three (3) officers assaulting me while in OMH"].)

an appeal from the denial of a grievance by a superintendent, having done so at least six times. (Hrg. Ex. D-3; Hrg. Tr. at 30-32, 71-73.)

For all these reasons, the Court finds that Plaintiff's four proffered excuses–whether considered individually or together–do not constitute special circumstances justifying his failure to exhaust his available administrative remedies before filing this action. A procedure was available for Plaintiff to grieve the assault alleged in this action; and that procedure was made known to him; however, for whatever reason, he simply failed to follow it. Under the circumstances, the sound purposes of the exhaustion requirement (*see, supra,* Part I of this Decision and Order) have been thwarted.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's Second Amended Complaint (Dkt. No. 8) is **DISMISSED in its entirety without prejudice** for failure to exhaust his available administrative remedies before filing this action, pursuant to the PLRA; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment for Defendants and close the file in this action.

Dated: January 27, 2014
          Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge